Betty J. WILLIAMS, a/k/a Tina Williams, Petitioner, Appellant,

v.

Terry HOLBROOK, et al., Respondent, Appellee.

No. 82–1027.

United States Court of Appeals, First Circuit.

Argued June 8, 1982.

Decided Sept. 23, 1982.

Philip M. Weinberg, Boston, Mass., with whom Geller & Weinberg, Boston, Mass., was on brief, for appellant.

Paula J. DeGiacomo, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, and Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, ROSENN, Senior Circuit Judge*.

ROSENN, Circuit Judge.

Petitioner, Betty Williams, appeals from the dismissal by the United States District Court for the District of Massachusetts of her second application for a writ of habeas corpus which challenges the constitutionality of her criminal conviction by the Commonwealth of Massachusetts and resulting incarceration. The district court agreed with the magistrate to whom respondents' motion to dismiss the application for lack of exhaustion and abuse of the writ was referred that petitioner's state remedies were exhausted. The court differed with the magistrate, however, on the issue of abuse of the writ. On that ground, the court dismissed the petition, holding that petitioner was estopped from ever raising claims presented by her first petition pending in the district court when she escaped from prison. We reverse.

* Of the Third Circuit, sitting by designation.

## I

In 1971, a jury found Williams guilty of murder in the first degree, and the Superior Court of Middlesex County, Massachusetts, sentenced her to life imprisonment. On appeal, the Supreme Judicial Court found no error in the conduct of the trial or the jury's verdict but, nevertheless, modified the verdict to guilty of murder in the second degree, making petitioner eligible for parole after fifteen years. *Commonwealth v. Williams,* 364 Mass. 145, 301 N.E.2d 683, 688 (1973). On April 13, 1978, while Williams was serving her life sentence at the Massachusetts Correctional Institution at Framingham, she filed in the United States District Court her first application for federal habeas corpus relief along with a request for appointment of counsel. The application alleged that violations of her constitutional rights invalidated her conviction. The court did not act upon her petition and request for counsel until November 14, 1978, seven months after filing, when the court allowed the motion for appointment of counsel and ordered respondents to show cause why the writ should not be granted, returnable November 24, 1978.[1] Petitioner, however, had escaped from prison the day before and did not receive notice of the court's action. She was returned to prison March 1, 1979.

Shortly after her return to custody, Williams filed a motion to reopen the original petition for consideration of her constitutional claims on the merits. The court denied the motion expressly declining to decide whether petitioner was entitled to file a successive petition based on the same claims. On May 6, 1980, Williams filed her second petition. Her second petition contained substantially the same claims asserted in her first petition, somewhat more fully articulated.[2] Respondents moved to

dismiss the petition on the grounds of abuse of the writ and failure to exhaust all of the claims. The district court referred the motion to a magistrate for a hearing on those questions. The magistrate rejected both challenges to consideration of the merits of the petition. The district court, while agreeing that petitioner had exhausted her claims, dismissed the petition for abuse of the writ because of petitioner's escape from prison during the pendency of her first petition.

## II.

The threshold question which may be dispositive of the appeal is whether the petitioner exhausted in the state court her remedies for each of her federal claims.

### A.

▮ As a matter of comity between the state and federal courts, the latter are restrained in the exercise of their power to grant writs of habeas corpus to state-held prisoners by the exhaustion doctrine, codified at 28 U.S.C. § 2254(b) and (c). *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 1201–1202, 1203, 71 L.Ed.2d 379 (1982); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Dirring v. Commonwealth,* 459 F.2d 953, 955 (1st Cir. 1972). The doctrine reflects acknowledgment at the federal level of a state's enormous interest in maintaining the integrity of its administration of criminal justice and therefore the interest of its courts in initially reviewing alleged trial errors which a state prisoner applying for federal habeas corpus relief would assert in the federal courts. *Rose v. Lundy,* 102 S.Ct. at 1203; *Picard v. Connor,* 404 U.S. at 275, 92 S.Ct. at 512.

▮ Williams' right to obtain relief in the federal courts on the basis of alleged

1. In entering his order, the district judge noted that that very day the petition and file came to his attention for the first time, having been forwarded by the Clerk to his chambers the day before.

2. Respondents conceded in the district court that petitioner's second petition raises the same fifth and sixth amendment claims asserted in

her first petition. See the district court's Memorandum and Order, page 1, filed October 29, 1981. On appeal, respondents submit that petitioner in her first petition "did not assert an ascertainable claim under the sixth amendment right to assistance of counsel;" however, they do not appear to press the point.

constitutional infirmities in her state conviction and confinement is therefore conditioned, under the exhaustion doctrine, upon her first having fairly presented, to the extent possible, all of her federal claims to the state courts. She must have provided the state courts not only with all of the facts supporting her constitutional claims but also must have submitted the same governing legal arguments she would make in the district court. *Picard v. Connor,* 404 U.S. at 277–78, 92 S.Ct. at 513–14; *Domaingue v. Butterworth,* 641 F.2d 8, 12 (1st Cir. 1981); *Turner v. Fair,* 617 F.2d 7, 11 (1st Cir. 1980); *Salemme v. Ristaino,* 587 F.2d 81, 86 (1st Cir. 1978); *Fillippini v. Ristaino,* 585 F.2d 1163, 1165 (1st Cir. 1978). On the other hand, she is not precluded from some reformulation of the claims she made in the state courts, since exhaustion requires only that "the *substance* of a federal habeas corpus claim must first be presented to the state courts." *Picard v. Connor,* 404 U.S. at 278, 92 S.Ct. at 513 (emphasis added). Nor, for purposes of satisfying exhaustion, must petitioner adhere inflexibly to the legal theories and factual allegations recited to the state courts; a recitation in the state courts "book and verse" of the constitutional provisions on which she relies in the federal court is not mandated. *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1958), *quoted with approval in Picard v. Connor,* 404 U.S. at 278, 92 S.Ct. at 513.

### B.

Following her indictment in Massachusetts for murder in the first degree and her arrest in 1970 in Chicago, Illinois, petitioner made a series of admissions to the police before trial. The first of these inculpatory statements was made while she was in custody on board a plane from Chicago to Massachusetts. She made further statements upon her arrival and detention at the Watertown, Massachusetts, police station.

At trial Williams' attorney moved to suppress the statements. He advanced the argument, first at the suppression hearing, and, after its rejection by the trial judge, on appeal to the Massachusetts Supreme Judicial Court, that petitioner had not waived her right to be silent and her right to the presence of counsel despite her receipt of *Miranda* warnings at various times during the period when the statements sought to be suppressed were made.

Petitioner's second petition for habeas corpus, now before us, asserts that her confinement is illegal because of the following constitutional claims:

25. [Her] confinement . . . is founded on a conviction which was based on the jury's consideration of an involuntary confession obtained subsequent to her indictment and after appointment of counsel, in violation of her right to counsel and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution.

26. [Her] confinement . . . is founded on a conviction which was based on the jury's consideration of an involuntary confession obtained in violation of petitioner's right to counsel and right not to incriminate herself under the Fifth and Fourteenth Amendments to the United States Constitution.

27. . . . [T]he trial court and the Supreme Judicial Court failed to make a determination of the issue of the petitioner's waiver of her right to counsel and the voluntariness of petitioner's confession in accordance with the standards set down by the United States Supreme Court, thereby violating petitioner's rights under the Fourteenth Amendment to the United States Constitution.

28. . . . [T]he trial court and the Supreme Judicial Court applied a rule which diminished the burden of proof the prosecution must sustain in order to find that the petitioner waived her rights under the Fifth and Sixth Amendments, thereby violating petitioner's rights under the Fourteenth Amendment to the United States Constitution.

The answer to the petition concedes exhaustion in the state courts of petitioner's claims stated in paragraphs 25 and 26 of the petition. Respondents argue only lack of

exhaustion of the issues presented in paragraphs 27 and 28 of the petition. Now, on appeal, respondents urge that Williams failed to present to the Massachusetts Supreme Judicial Court the substance or substantial equivalent of her sixth amendment claim contained in paragraph 25, as well as of her claims outlined in paragraphs 27 and 28. Paragraph 25, however, merely states petitioner's general claim that her sixth amendment right to counsel was violated. The specifics of both petitioner's fifth and sixth amendment claims are stated in paragraphs 27 and 28. The latter specifically refers to the sixth, as well as the fifth amendment, and raises issues of the applicable constitutional standards for determining whether rights to legal assistance and to be silent under questioning by police have been waived, the voluntariness of a confession made to police, and the prosecution's burden of proof in establishing such waivers and voluntariness. These specific claims, in any event, incorporate the general claims.

## C.

■ With respect to exhaustion of petitioner's fifth amendment claims, it is clear that in deciding petitioner's appeal from her conviction and sentence the Supreme Judicial Court ruled on the questions of whether petitioner waived her fifth amendment rights to be silent and to have counsel present during her police interrogation, and on the voluntariness of the inculpatory statements the police obtained.[3] The court, holding expressly that petitioner's statements were properly admitted into evidence, upheld the trial court's findings supporting that determination and concluded

that petitioner had waived her right not to speak and her right to the assistance of counsel. Moreover, as the excerpt from the Supreme Judicial Court's opinion clearly discloses, the court reached its decision, whether or not correctly, on the basis of the standard which it quoted from the trial court's opinion. Thus, exhaustion of the fifth amendment claims stated in paragraphs 26 and 27 of Williams' petition is satisfied.

■ Petitioner claims in paragraph 28 of her petition that, in deciding that she waived her constitutional rights of silence and the assistance of counsel during police questioning, the state courts improperly assessed the burden of proof of such waivers. The Supreme Judicial Court's opinion does not address the burden-of-proof issue. In reaching the decision that Williams waived her rights, however, the state courts necessarily considered who carried and what was the burden of proof of waiver. Moreover, petitioner's claims involving the applicable constitutional standards and burden of proof of waiver and voluntariness are so closely interwoven with the waiver issue itself that raising the latter automatically entailed raising the former. *See Fillippini v. Ristaino,* 585 F.2d 1163, 1165 (1st Cir. 1978). *See also Townsend v. Sain,* 372 U.S. 293, 314–316, 83 S.Ct. 745, 757–59, 9 L.Ed.2d 770 (1963).

Respondents argue that the *Fillippini* holding which we follow today has been rejected by the Supreme Court in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, the two cases stand for quite different propositions. In *Rose v. Lundy,* the Supreme Court held that, with respect to state prisoners' habeas

3. The court stated:

There was no error in the admission of the statements in evidence. They were admitted after a lengthy voir dire hearing on the defendant's motion to suppress them. Thereafter the judge made extensive findings of fact, which were warranted by the evidence, and which support his rulings. In substance he found that the constitutional requirements of *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), had been met; that the defendant did not have the assist-

ance of counsel at the time that she made the statements but that she "freely, intelligently, knowingly, voluntarily, and willingly waived her constitutional rights not to talk" and her right to the assistance of counsel. He further found that "in few cases have I seen so many *Miranda v. Arizona* warnings given to a defendant and so many knowing, intelligent, free, and voluntary waivings of rights."
*Commonwealth v. Williams,* 364 Mass. 145, 147–48, 301 N.E.2d 683, 685–86 (1973) (footnote omitted).

petitions containing exhausted and unexhausted claims, the federal courts may not select and decide only the exhausted claims. In such circumstances, the "mixed petitions" must be dismissed in their entirety. In *Lundy,* the district court had, in fact, decided unexhausted claims which were so interrelated to the exhausted claims that it was difficult to sift and consider one from the other. The Court observed that its rule of total exhaustion "will relieve the district courts of the difficult if not impossible task of deciding when claims are related, and will reduce the temptation to consider unexhausted claims." 102 S.Ct. at 1204.

In *Fillippini v. Ristaino,* the district court ruled that the petitioner there had raised, on appeal from his criminal conviction in the state courts, the issue that the trial judge should have inquired into whether petitioner's waiver of trial counsel was intelligent, effective, and voluntary. The district court held, however, that a second issue raised by petitioner, that his waiver was not, in fact, intelligent, effective, and voluntary, had not been presented in the state courts. This court, although agreeing that the focus of the discussion in the state courts was the adequacy of the trial judge's inquiry, opined that that question was raised for the purpose of showing that the waiver was not, in fact, voluntary and intelligent. The two issues were so factually and logically related that the raising of the one afforded the state courts a fair opportunity to consider both. Thus, *Fillippini* held not that *related unexhausted* claims are properly decided by the federal courts, a position untenable under *Rose v. Lundy,* but that petitioner *had exhausted both claims* under discussion. The holding in *Fillippini,* which we follow here, is in accord with the Supreme Court's admonition in *Picard v. Connor, supra,* 404 U.S. at 278, 92 S.Ct. at 513, to look to whether the state courts have had a fair opportunity to consider the "substance" of the federal claims.

### D.

We now turn to the more difficult question of whether the Supreme Judicial Court had an opportunity to rule on petitioner's sixth amendment claims.

 Respondents contend that the sixth amendment waiver of counsel and voluntariness of confession issues were not adequately raised before the Supreme Judicial Court because they were presented to that court only in the context of her fifth amendment right to be silent and her right to have counsel present as an adjunct to her privilege against compelled self-incrimination. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). They further contend that the Supreme Judicial Court did not separately address petitioner's sixth amendment claim. Williams appears to concede that her sixth amendment claim was ignored by the state court,[4] but maintains that the question was fairly raised in her brief on appeal. Petitioner correctly argues that the law of exhaustion requires only that her federal claims be first *presented* to the state courts so as to give them an opportunity to consider the constitutional issues; she need not demonstrate that those courts either addressed or decided them. *Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Kines v. Butterworth,* 669 F.2d 6, 12 (1st Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2250, 72 L.Ed.2d 856 (1982).

However, a fair reading of the Supreme Judicial Court's opinion as well as of petitioner's brief reveals that the sixth amendment argument was in substance both presented to and addressed by that court in a manner differentiating it from petitioner's fifth amendment argument. Although in neither the brief nor the opinion is either the sixth or fifth amendment mentioned by name, as already alluded to, recitation of "book and verse on the federal constitution" is not necessary for purposes of exhaustion. *Picard v. Connor,* 404 U.S. at 278, 92 S.Ct. at 513 (quoting from *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1958)).

---

4. Petitioner's position on exhaustion, that the Supreme Judicial Court did not consider her sixth amendment argument, is consistent with her position on the merits that the court erred in failing to apply appropriate sixth amendment standards to the waiver of counsel issue.

Williams' brief emphasized the facts of her situation. These were among the facts stressed: that she was represented by appointed counsel at the time she was arrested and detained in Chicago; that she made no statement while in Chicago; that she made her first inculpatory statement to the Massachusetts state trooper holding her in custody while in flight from Chicago to Boston; that *Miranda* warnings were then given her but that it was physically impossible on board the plane to have counsel summoned or even reached by phone; that her Chicago attorney was unavailable to her at the time of the interrogations and had not consented to her police questioning; that she continued to make statements at the police station in Massachusetts until a Massachusetts attorney was appointed to represent her; and that these events ensued after her indictment and arrest.

These facts support a claim of sixth amendment abridgment, as respondents concede. Respondents correctly submit, however, that presentation of factual data without the articulation of the substance or substantial equivalent of the legal argument thereby supported does not satisfy the exhaustion requirement. *See Picard v. Connor, supra,* 404 U.S. at 276–78, 92 S.Ct. at 512–13; *Eaton v. Holbrook,* 671 F.2d 670, 671 (1st Cir. 1982); *Fillippini v. Ristaino,* 585 F.2d 1163, 1165 (1st Cir. 1978). As was pointed out in *Eaton v. Holbrook,* 671 F.2d at 671, a "key problem," therefore, in cases such as the one before us is defining the "substance" of a claim.

As this court has made clear, for the substance of a claim to have been advanced before the state courts, the same legal theory must have been presented to them. It is not enough that a generalized objection invoking the rule of law now relied on in federal court was advanced before the state courts. Thus in *Domaingue v. Butterworth,* 641 F.2d 8 (1st Cir. 1981), this court held that petitioner, who had advanced a narrow ineffective assistance of counsel claim based on trial counsel's failure to object to a de-

fective self-defense instruction, had not exhausted his remedies with respect to a generalized attack on trial counsel's adequacy based on numerous occurrences which were not part of the record before the state court. And in *Turner v. Fair,* 617 F.2d 7 (1st Cir. 1980), the court held that petitioner, who had objected to the trial court's refusal to allow him to introduce evidence of witnesses' prior crimes on cross-examination in order to impeach the witnesses' credibility, could not in a federal habeas proceeding advance the distinct, unexhausted claim that cross-examination of the witnesses would have revealed that they had special knowledge of the store in which the killing for which petitioner was convicted had occurred.[5] Although both claims were predicated on a sixth amendment confrontation claim, "the theory upon which the alleged sixth amendment violation was premised ha[d] since undergone material alteration. As the state court ha[d] not had 'a fair opportunity to consider . . . and to correct' the violation now alleged," *id.* at 11, the claim was held not to be exhausted.

At the same time, this court has recognized that an argument need not have been highlighted in a petitioner's brief before the state courts for it to have been adequately raised. *Fillippini v. Ristaino,* 585 F.2d 1163 (1st Cir. 1978). In *Fillippini,* the petitioner objected that his waiver of his right to counsel was ineffective *inter alia* because (1) the trial judge should have inquired into whether the waiver was intelligent, effective, and voluntary, and (2) the waiver was not in fact intelligent, effective, and voluntary. The Government objected that although the issue of the adequacy of the trial judge's inquiry had been raised before the state courts, the underlying question whether in fact the waiver was voluntary had not been presented. After noting that the petitioner's brief to the Massachusetts Appeals Court had presented the issue " '[w]hether the defendant was deprived of his rights to due process and effective assistance of counsel because he

---

5. Petitioner argued that the witnesses, who in return for a grant of immunity had confessed to driving in the getaway car, had in fact committed the murder.

was forced to proceed pro se,' " *id.* at 1165, Chief Judge Coffin writing for the court concluded that the issue of the voluntariness of the waiver had been adequately presented to the state court.

> To be sure, most of the discussion focused on the adequacy of inquiry, but that issue is closely related. Appellant was trying to show that his waiver was not voluntary and intelligent because the court had failed to do all it should have before accepting the waiver. The two arguments are so closely linked, both factually and logically, that we cannot say the state court lacked a fair opportunity to consider either.

*Id.*

In the case before us, the framework of Williams' sixth amendment claim can be found in her brief to the Supreme Judicial Court. Petitioner's brief argued that because her Chicago attorney continued to represent her until her Boston counsel was appointed, the *Miranda* warnings given under the circumstances were "defective." Although the argument was not presented as artfully as it might have been, nonetheless, following the argument that Chicago counsel continued to represent petitioner and should have been consulted before police questioning on board the plane, the brief cites *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1757, 12 L.Ed.2d 977 (1964), and *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Those cases hold that pretrial inculpatory statements of a defendant made without the benefit of the presence of the defendant's then retained counsel are improperly admitted at trial in violation of the defendant's sixth amendment right to counsel. Although it is buried in the context of her fifth amendment claims, petitioner did present to the Supreme Judicial Court her claim that because her counsel was clearly unavailable and uninformed of her police interrogation, the inculpatory admission after receipt of *Miranda* warnings was an improper basis for finding a legally sufficient waiver of her right to have the assistance of counsel.

■ That petitioner's brief sufficiently presented the substance of her sixth amendment waiver claim, notwithstanding that a fifth amendment claim was also raised in the brief, is confirmed by the Supreme Judicial Court's implicit rejection of the sixth amendment aspect of the waiver of counsel issue presented in petitioner's brief.

After stating its general approval of the trial judge's findings that the requirements of *Miranda v. Arizona* had been met and that the petitioner here had waived her constitutional rights not to speak and to have the assistance of counsel, the Supreme Judicial Court commented on some of the special facts of her case mentioned in petitioner's brief. 364 Mass. at 148, 301 N.E.2d at 686. The court did not refer expressly to any of the facts in the brief implicating the sixth amendment abridgment to which we have referred above, i.e., the petitioner's post-indictment status, her engagement of Chicago counsel who did not consent to her police interrogation, and the making of a first statement and the giving of *Miranda* warnings on a plane. Nevertheless, the court could only have had those facts in mind, indicating a possible violation of petitioner's sixth amendment rights, when it stated:

> This is not a case like *Commonwealth v. McKenna,* 355 Mass. 313, 319–320, 244 N.E.2d 560 (1969), where the police *actively* prevented an attorney from reaching his client. [Emphasis supplied.]

364 Mass. at 148, 301 N.E.2d at 686.

The police in *Commonwealth v. McKenna, supra,* obtained a confession from an arrested murder suspect. While they read *Miranda* warnings to the suspect during their interrogation of him, the police, contrary to the purpose and spirit of requiring warnings, affirmatively prevented the suspect's attorney from being present during the interrogation by misinforming him as to its time and place. The court held that the arrestee's sixth amendment right was thereby violated requiring that his statement to the police be excluded from consideration at his subsequent trial. 355 Mass. at 319–20, 244 N.E.2d at 567. In petition-

er's case here, an interrogation occurred and *Miranda* warnings were given at a time when her counsel was unavailable. In the instant case, however, the police did not *actively* prevent counsel from being present as in *McKenna*. The Supreme Judicial Court for this reason distinguished *McKenna* factually and implicitly ruled that in this case the facts implicating a possible sixth amendment violation were not sufficiently flagrant to warrant a finding that the amendment was violated.

Respondents concede that in *McKenna* there was reference to the sixth amendment right to the assistance of counsel but argue that that was not the reason for its citation by the appellate court in petitioner's case. But the court specifically referred to that part of the *McKenna* opinion wherein the sixth amendment violation was discussed. 364 Mass. at 148, 301 N.E.2d at 686, *citing* 355 Mass. at 319–320, 244 N.E.2d 560. As did Williams' appeal to the Supreme Judicial Court, the *McKenna* appeal raised questions of both the fifth and sixth amendment right to counsel. After its discussion and ruling on the waiver of counsel issue in the fifth amendment context, the court in *McKenna* went on to consider the waiver issue with respect to the appellant's sixth amendment right to counsel. It is only to this part of the *McKenna* opinion that the court in its opinion in this case referred. Thus, *McKenna* was distinguished and specifically cited with respect to its sixth amendment holding only.

As in *McKenna,* the court in the case at bar differentiated between petitioner's fifth amendment right to counsel and her sixth amendment right, holding that both were waived. In the instant case, we agree,

therefore, with the magistrate and the district court and hold that the exhaustion requirement as to Williams' federal claims, including her sixth amendment claims, has been satisfied. Because petitioner's federal claims were sufficiently presented to the state courts to satisfy the exhaustion doctrine, we need not address petitioner's alternative basis for finding exhaustion, that further review of her claims in the state courts is not possible under the Commonwealth's recently revised post-conviction review statutes.

III.

A.

The extraordinary remedy of the writ of habeas corpus, preserved in our Constitution, Article I, Section 9, Clause 2, is expressly extended by the federal habeas corpus statute, 28 U.S.C. §§ 2241(c)(3) and 2254(a), to prisoners in state custody in violation of the Constitution or laws or treaties of the United States. Traditionally, the availability of the remedy depended solely on the in-custody status of the petitioner and successive applications for the writ were allowed as long as confinement continued. *See Sanders v. United States,* 373 U.S. 1, 7–8, 11–12, 83 S.Ct. 1068, 1072–73, 1075, 10 L.Ed.2d 148 (1963); *Fay v. Noia,* 372 U.S. 391, 430, 83 S.Ct. 822, 844, 9 L.Ed.2d 837 (1963). The statute, however, permits the federal courts discretion to decline to consider a successive application for the writ if it presents claims submitted in a prior application which have been decided on the merits. 28 U.S.C. § 2244(b) [6] and Rule 9(b) of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254.[7] Respon-

---

**6.** 28 U.S.C. § 2244(b) provides as follows:

(b) When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a state court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United

States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

**7.** Subsection (b) of Rule 9 of the Rules Governing Section 2254 Cases provides as follows:

dents concede that the statute, by its terms, does not authorize dismissal of petitioner's claims.[8] They argue, however, that the rule styled in *Sanders v. United States, supra,* which the statute was intended to codify, is broader than the literal language of the statute. *See Potts v. Zant,* 638 F.2d 727, 739 (5th Cir.), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981).

It is true that in *Sanders,* the Supreme Court left open the possibility that a successive petition containing claims advanced but not adjudicated in a previous petition might be dismissed for abuse of the writ. 373 U.S. at 17, 83 S.Ct. at 1078. The Court clearly intended, however, that this restriction on the availability of the writ because of misconduct be

> "[n]arrowly circumscribed, in conformity to the historical role of the writ of habeas corpus as an effective and imperative remedy for detention contrary to fundamental law . . . ."

*Sanders v. United States,* 373 U.S. at 17–18, 83 S.Ct. at 1078 (quoting from *Fay v. Noia,* 372 U.S. at 438, 83 S.Ct. at 849). In discussing when a successive petition might be deemed an abuse of the writ, the Court in *Sanders* referred to *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924). In *Wong Doo,* the petitioner had purposely withheld a ground for relief from the district court on his first application for the writ. The district court therefore denied petitioner the right to raise the ground in a second application. Proof as to the second ground had been available at the

hearing on the first petition, and no reason was presented for not having offered it then. The Supreme Court in *Wong Doo* upheld dismissal of the second petition. Drawing from that decision, the Court in *Sanders* stated:

> [T]he prisoner who on a prior motion under § 2255 has *deliberately* withheld a ground for relief need not be heard if he asserts that ground in a successive motion; his action is inequitable—an abuse of the remedy—and the court may in its discretion deny him a hearing.[9]

373 U.S. at 10, 83 S.Ct. at 1074 (emphasis added). The Court distinguished the "bad faith" conduct of the petitioner in *Wong Doo* from the innocent failure of a petitioner in *Price v. Johnston,* 334 U.S. 266, 287–93, 68 S.Ct. 1049, 1061–63, 92 L.Ed. 1356 (1948), to raise a ground for relief in a priorly-filed petition. 373 U.S. at 10. *See Rose v. Lundy, supra,* 102 S.Ct. at 1204–05 (plurality opinion), and Justice Brennan's dissent, *id.,* 102 S.Ct. at 1210–13.

The *Sanders* Court also referred to *Fay v. Noia, supra,* and *Townsend v. Sain, supra,* as illustrating instances when adjudication of the merits of a petition for the writ could be denied. These cases deal with a petitioner's forfeiture of his right to an adjudication of claims in a petition because of earlier improprieties in prosecuting or failing to prosecute those claims in the state courts. In *Fay v. Noia* the conduct was the "deliberate bypassing" of state court procedures and in *Townsend v. Sain,* "inexcusable neglect" in developing the evidence supporting a claim. In all three cases, only truly

---

(b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

**8.** 28 U.S.C. § 2244(b) applies only when there has been an "evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law." In the case at bar the district court has not conducted such a hearing.

Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts applies only if new and different grounds are alleged or the successive petition "fails to allege new or different grounds for relief and the prior determination was on the merits." In the case at bar no new grounds have been alleged in the second petition, and the prior dismissal did not involve a determination on the merits.

**9.** The Court's remarks were intended to be equally applicable to § 2244 petitions and § 2255 motions. 373 U.S. at 15, 83 S.Ct. at 1077.

bad faith conduct with respect to the manipulation of court processes was held to justify withholding the remedy of the writ. It remains to be determined whether petitioner's conduct in the case at bar constitutes the type of bad faith abuse of the writ that should disentitle her from bringing her successive petition.

### B.

The district court rested its decision that petitioner by her escape forfeited all future consideration of her claims principally on two cases, *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), and *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975). In *Molinaro,* the Court refused to review on direct appeal the conviction of an escaped state criminal defendant on the ground that his escape disentitled him "to call upon the resources of the Court for determination of his claims." 396 U.S. at 366, 90 S.Ct. at 499. In *Estelle v. Dorrough,* the Court rejected an equal protection challenge to a state statute providing for the automatic dismissal of a pending appeal by an escaped felon upon his escape and refusing reinstatement of the appeal unless the felon voluntarily surrendered within ten days of his escape. The Court upheld the state's purpose of deterring escape and imposing sanctions for disruption of the state appellate process. 420 U.S. at 537, 541–42, 95 S.Ct. at 1175, 1177–78.

We believe the district court erred in applying these holdings, without qualification, to the question of petitioner's right in a successive petition to seek habeas corpus relief, after her return to custody. Both *Molinaro* and *Estelle* involve forfeiture of direct appeals by escape. As the Court observed in *Estelle,* "there is no federal constitutional right to state appellate review of state criminal convictions." 420 U.S. at 536, 95 S.Ct. at 1175. The "Privilege of the Writ," on the other hand, besides being the subject of a federal statute, *is* a constitutional right. Moreover, under the governing state statutes, a criminal defendant is entitled to only one appeal,

which may be lost absolutely even for failure to comply with a procedural requirement. There is no right to reinstatement of an appeal even where a right of appeal has been provided. *See United States v. Smith,* 544 F.2d 832, 834 (5th Cir. 1977). The right of continued access to the writ remedy, on the other hand, is inherent in the remedy and is available only for the gravest of injuries, namely loss of life or liberty in violation of fundamental rights. As stated in *Townsend v. Sain, supra,*

> The whole history of the writ—its unique development—refutes a construction of the federal court's habeas corpus powers that would assimilate their task to that of courts of appellate review. The function on habeas is different. It is to test by way of an original civil proceeding, independent of the normal channels of review of criminal judgments, the very gravest allegations. State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution. Simply because detention so obtained is intolerable, the opportunity for redress, which presupposes the opportunity to be heard, to argue and present evidence, must never be totally foreclosed.

372 U.S. at 311–12, 83 S.Ct. at 756. *See also Sanders v. United States, supra,* 373 U.S. at 8, 83 S.Ct. at 1073. The forfeiture of successive petitions for habeas corpus, aside from the constitutional and statutory obstacles, is not analogous to the forfeiture of a direct appeal and its reinstatement, and *Molinaro* and *Estelle* do not provide authority for the district court's action.

Moreover, a close reading of *Molinaro* reveals that although the decision reflects a view that the very act of escape may disentitle a person from further recourse to judicial review of his conviction, the cases on which it relied, *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876), and *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887), emphasize another ground for refusing to hear an appeal of an escaped prisoner. As the *Smith* Court phrased the dilemma,

If we affirm the judgment, [the defendant] is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case.

94 U.S. at 97.

These twin considerations, the disentitlement of an escapee to pursue further post-trial remedies and the concern that allowing the appeal of a prisoner on escape status will allow him to "opt in" only if the appeal is decided favorably, surface in the lower court decisions faced with ruling on the appeals of escapees. Significantly, it is the latter consideration which is given greatest weight by the courts. Thus in *United States v. Tremont,* 438 F.2d 1202 (1st Cir. 1971), this court refused to hear an appeal from the denial of a motion for a new trial where the defendant had been an escapee for six weeks. "That in this posture [the defendant] can abscond, to return only if it should develop that his conviction is vacated, does not sit well." *Id.* at 1203. *Accord, Lopez v. Malley,* 552 F.2d 682, 683 (10th Cir. 1977)("The reasoning in support of such dismissals is that, if the case were affirmed, the appellant in all likelihood would not surrender to submit to his sentence. If reversed, he will surrender only if it is in his interest.")

The parties have called to our attention three cases involving a prisoner who escaped while pursuing a writ of habeas corpus. *United States ex rel. Bailey v. United States Commanding Officer,* 496 F.2d 324 (1st Cir. 1974); *Johnson v. Laird,* 432 F.2d 77 (9th Cir. 1970); *Fowler v. Leeke,* 509 F.Supp. 544 (D.S.C.1979). In *United States ex rel. Bailey,* this court refused to overturn the dismissal of a habeas petition brought by a soldier who twice absented himself from Army custody during the proceedings and was then still on escape status. The court, exasperated by "[t]he game of hide and seek," 496 F.2d at 325, engaged in by the petitioner, concluded that "petitioner has brought himself by Janus-like conduct

in seeking to involve the processes of the law while flouting them a disentitlement 'to call upon the resources of the Court for determination of his claims.'" *Id.* at 326 (quoting *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970)).

The Ninth Circuit in *Johnson v. Laird, supra,* was somewhat more solicitous of a soldier who, though AWOL, had not engaged in the provoking tactics employed by Bailey. The court began by noting:

At the outset we feel compelled to express our strong displeasure with appellant's attempts at "self-help" by voluntarily absenting himself from the military and from the country. By his action, he is telling this court that he will submit to its decree only if it is to his liking.

432 F.2d at 79. Nonetheless, the court did not dismiss the appeal outright. Rather, the court ruled that it would allow the petitioner, whom it knew to be in Vancouver, British Columbia, (and who presumably could be reached by counsel) thirty days to surrender to the military authorities before it would dismiss the appeal.

In *Fowler v. Leeke, supra,* the district court granted summary judgment dismissing the habeas petition of a prisoner who escaped and was then recaptured. Although the court noted that "'a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks,'" 509 F.Supp. at 546 n.4 (quoting *Sanders v. United States,* 373 U.S. 1, 17–18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963)), it nonetheless proceeded to consider the petitioner's claims on the merits before ruling against him.

To summarize, although courts sometimes speak of an escapee's "disentitlement" to post-trial review, they primarily have been concerned about deciding an appeal of a person not then in custody. Indeed, no cases have been cited in which a federal court has denied direct or collateral appellate review to an escapee who was then before the court. *But cf. Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (state may, consistent with fourteenth amendment, declare by

statute that prisoner who escapes during pendency of appeal forfeits right to appeal). Nor have respondents cited any case to us in which consideration of a successive petition for habeas corpus has been denied based on the escape of a petitioner during the pendency of a prior petition. As we have indicated, in the cases which respondents do cite, escapes of the petitioner are much more readily characterized as a deliberate misuse of court processes than is presented here.

▮ In deciding whether in the instant case the petitioner's escape should be deemed to render the filing of her second petition an abuse of the writ, it is well to remember what did *not* happen. First, petitioner did not escape after being notified that counsel had been appointed and a return date had been set to hear the merits of her petition. Rather, she escaped after having heard no word from the court for seven months after the petition was filed. Her conduct cannot be said to flout the judicial system openly in the same way that Private Bailey's hide-and-go-seek game did in *United States ex rel. Bailey.* Had petitioner escaped *after* being notified of appointment of counsel and the scheduling of a hearing date, her claim to a right to refile would stand on much weaker ground. And second, and self-evidently, because petitioner is presently in custody the court is not faced with a party in the position of opting in only if the result is favorable.

*Sanders* dictates that, above all, a habeas petitioner is entitled to a day in court if the ends of justice demand that a hearing be held. In the present case the petitioner who faces life imprisonment has raised serious allegations regarding what appears to have been an ineffective waiver of her sixth amendment right to counsel. The district court fashioned what can only be characterized as a per se rule that an escape during the pendency of a habeas corpus petition estops the filing of successive habeas petitions. Although Congress may well have the power so to legislate, it has not so done.

The facts here do not warrant abrogating the traditional liberality of the remedy of the writ.[10] We therefore hold that the district court erred in not allowing the petitioner to pursue her second petition.

### IV.

Accordingly, the order of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

*So ordered.*

---

10. In this connection, it should be noted that escape from prison constitutes a crime that carries its own sanctions which remain unaffected by this opinion.