**Louis LAURORE, Petitioner,**

v.

**Luis SPENCER, Respondent.**

**No. CIV.A. 02–12022–WGY.**

United States District Court,
D. Massachusetts.

June 19, 2003.

Natalie S Monroe, Attorney General's Office, Boston, for Luis Spencer, Respondent.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

The petitioner, Louis Laurore ("Laurore"), brought a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenged his conviction in the Middlesex Superior Court for first degree murder, armed assault with intent to murder, and violation of an abuse and protective order. Amended Pet. [Docket No. 20] ¶¶ 1–4; Resp't Mem. in Support of Mot. to Dismiss ("Resp't Mem. I") [Docket No. 13] at 2. The respondent, Luis Spencer ("Spencer"), moved to dismiss, alleging that some of Laurore's claims were unexhausted [Docket Nos. 12, 22]. On June 4, 2003, this Court ruled that Laurore's Amended Petition contained both exhausted and unexhausted claims and granted the Motion to Dismiss.

On June 16, 2003, Laurore moved for reconsideration, claiming that he had been unable to respond to Spencer's Motion to Dismiss the Amended Petition because he was not served a copy of it until June 7, 2003. Pet.'r Mot. For Reconsideration [Docket No. 24] at 1. In that Motion for Reconsideration, Laurore also argued substantively why the Court should not grant Spencer's motion. *Id.* at 2–3.

Upon further reflection, the Court's order on June 4, 2003 is vacated. The Court DENIES Spencer's Motion to Dismiss and stays proceedings until Laurore either files a Motion to Amend his petition to drop the unexhausted claims (within thirty days of the date of this order) or files a new petition (after proper exhaustion of his state-court remedies). The following memorandum serves to explain the reasoning behind the Court's revised decision.

### A. Procedural Posture

On December 7, 1995, a Middlesex County grand jury indicted Laurore for murder in the first degree, armed assault with intent to murder, and violation of a restraining order. Resp't Mem. I at 2; Pet'r Brief to the Supreme Judicial Court on Appeal ("Pet'r Brief") (Ex. B to Resp't Supplemental App.) [Docket No. 11] at 1. While awaiting trial, Laurore was temporarily committed to Bridgewater State Hospital pursuant to Mass. Gen. Laws, ch. 123, § 18(a). Pet'r Brief at 2. On March 19, 1997, Laurore was found guilty by a jury on all charges and received a life sentence for the murder conviction and an 18–20 year concurrent sentence for the armed assault with intent to murder conviction. Resp't Mem. I at 2; Pet'r Brief at 2.

On March 19, 1997, Laurore timely appealed his conviction directly to the Supreme Judicial Court of Massachusetts pursuant to Mass. Gen. Laws, ch. 278, § 33E. Notice of Appeal (Ex. C. to Resp't Supp.App.) at 16. On October 25, 1999, before his appeal was heard, Laurore moved for a new trial pursuant to Mass. R.Crim. P. 30(b), claiming that his trial counsel provided constitutionally ineffective assistance of counsel. Pet'r Brief at 3; *Commonwealth v. Laurore*, 437 Mass. 65, 769 N.E.2d 725 (2002). This resulted in a stay of his direct appeal and a remand of his motion for new trial to the Massachusetts Superior Court. Resp't Mem. I at 2.

On December 19, 2000, Laurore's motion for new trial was denied by Judge Zobel. Zobel's Finding (Ex. C to Resp't Supplemental App.) at 18–19. Laurore appealed this finding directly to the Supreme Judicial Court of Massachusetts. Resp't Mem. I at 2. Thereafter, Laurore's two appeals— the appeal from his conviction and from the denial of his motion for new trial— were consolidated. *Id.*

On June 6, 2002, Laurore's conviction and the denial of his motion for new trial

were affirmed by the Supreme Judicial Court of Massachusetts. *Commonwealth v. Laurore*, 437 Mass. 65, 769 N.E.2d 725 (2002).

On October 22, 2002, Laurore filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 4] ("Original Petition"). On November 12, 2002, Spencer moved to extend the time to respond to December 18, 2002 [Docket No. 8]. Laurore responded in opposition to the motion on November 19, 2002 [Docket No. 9]. On November 21, 2002, this Court granted Spencer's motion to extend the time to respond. On December 18, 2002, Spencer filed a motion to dismiss for failure to exhaust state remedies [Docket No. 12]. On December 26, 2003, Laurore moved to amend the petition [Docket No. 14]. On March 20, 2003, the Court granted Laurore's motion to amend and Laurore amended his petition on April 25, 2003 [Docket No. 20] ("Amended Petition"). On May 19, 2002, Spencer answered the Amended Petition [Docket No. 21] and moved to dismiss it [Docket No. 22].

### B. Facts

Laurore's arrest and subsequent prosecution and conviction arose from the murder of Laurore's wife and shooting of Laurore's brother-in-law. *Laurore*, 437 Mass. at 67–68, 769 N.E.2d 725. Laurore's wife was shot in the face at very close range while her daughter was present; Laurore's brother-in-law was shot in the shoulder and struck in the head with a gun. *Id.* Laurore was convicted of first degree murder of his wife, armed assault with attempt to murder his brother-in-law, and violation of a protective order (because the murder of his wife occurred while the protective

order was in place). *Id.* at 66–67, 769 N.E.2d 725.

In his unsuccessful consolidated appeal to the Supreme Judicial Court, Laurore raised five issues: (1) his trial counsel was "constitutionally ineffective for failing to investigate or present evidence of [Laurore's] organic brain impairment"[1]; (2) the Commonwealth violated Laurore's right to be competent when tried because the "competency 'hearing' failed to comport with due process requirements" and the judge "erred in failing to conduct an evidentiary hearing" on Laurore's competency before denying his motion for a new trial; (3) the trial judge's failure to conduct a *sua sponte* hearing on the voluntariness of Laurore's statements, as well as the inadequate jury instructions on voluntariness, constituted "constitutional errors" creating a substantial likelihood of a miscarriage of justice; (4) the trial judge issued defective jury instructions on the element of assault, failed to instruct on unanimity as to armed assault to murder, and admitted the first page of the murder victim's restraining order application into evidence; and (5) Laurore should be granted a new trial under Mass. Gen. Laws ch. 278, § 33E in the interests of justice. Pet'r Brief at 11–14.

## II. DISCUSSION

### A. Standard for Exhaustion

■ In the interest of federal-state comity, the Supreme Court has held that before a federal court will accept a petition for habeas corpus, the petitioner must have exhausted all state judicial remedies available. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The exhaustion requirement is met once

---

1. As part of other arguments within the brief, Laurore also claimed his attorney was constitutionally ineffective for failing to request a specific instruction on unanimity. Pet'r Brief at 11–14.

the substance of the federal claim has been fairly presented to the state courts. *Id.; Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir.1987). This means that both the legal and factual underpinnings of the claim must have been presented to the state court before pursuing the habeas petition, and the legal theories and facts presented to the state and federal court must be the same. *Gagne,* 835 F.2d at 7; *Picard,* 404 U.S. at 276, 92 S.Ct. 509 (ruling that the claim the state prisoner presents to the federal courts must be the *"same* claim" that the prisoner presented to the state courts) (emphasis added); *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir.1997) ("[A] habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of this federal claim .... setting forth the factual underpinnings of a claim is insufficient, in and of itself, to constitute fair presentment of that claim.").

Deciding whether a petitioner's claim has been exhausted is "foremost a question of probability," that is, it turns on "the *likelihood* that the presentation in state court alerted that tribunal to the claim's federal quality." *Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir.1989) (emphasis in original); *see also Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir.1994). A court gauges probability not by guesswork but by "trappings—specific constitutional language, constitutional citation, appropriate federal precedent, substantive constitutional analogy, argument with no masking state-law character, and the like—such as would in all likelihood alert a reasonable jurist to the existence of the federal question." *Nadworny*, 872 F.2d at 1101.

Because the standard is based on probability, "the state court need not have addressed or decided a petitioner's federal claim in order for the exhaustion requirement to be met." *Gagne*, 835 F.2d at 8;

*see also Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Williams v. Holbrook,* 691 F.2d 3, 8 (1st Cir.1982) ("[T]he law of exhaustion requires only that [the petitioner's] federal claims be first presented to the state courts so as to give them an opportunity to consider the constitutional issues; [the petitioner] need not demonstrate that those courts either addressed or decided them."). Thus, the briefs that the petitioner submitted to the state courts are essential to the exhaustion analysis.

## B. Are Laurore's Claims Exhausted?

Laurore states seven grounds for habeas relief in his Amended Petition; Spencer claims that Grounds Five, Six, and Seven are unexhausted. *See* Resp't Mem. II. [Docket No. 23]. At first glance, it appears that Laurore has presented these same claims to the state court because the verbiage used in the habeas petition is almost the same as that used in the headings in his brief to the Supreme Judicial Court of Massachusetts. Upon a more careful review of the actual arguments within the brief, however, this Court rules that the Massachusetts Supreme Judicial Court did not have a "fair opportunity to consider the 'substance' of [*all* of Laurore's] federal claims" and to correct the now-alleged constitutional defects. *Williams*, 691 F.2d at 8.

### 1. Grounds Five, Six, & Seven: Claims Concerning the Trial Judge's Jury Instructions and Evidence Rulings

In his amended petition, Laurore seeks habeas relief because, *inter alia*, the state court judge allegedly (1) gave constitutionally defective instructions on the element of assault [Ground Five]; (2) failed to instruct on unanimity in violation of his due process rights [Ground Six]; and (3) erro-

neously admitted in evidence "a copy of the first page of the victim's application for an abuse protection order" in violation of the Fifth, Sixth, and Fourteenth amendments [Ground Seven]. Amended Pet. ¶¶ 12E–G.

■ In his Response in Opposition to Spencer's Motion to Dismiss [Docket No. 16] and his Motion For Reconsideration, Laurore asserts that he has exhausted all of his claims because he presented them to the state court. Pet'r Mot. For Reconsideration at 2–3. These arguments, however, are unpersuasive. Although Laurore indeed presented these three claims to the Supreme Judicial Court in his brief and claimed that these errors were "harmful constitutional errors" that "created a substantial likelihood of a miscarriage of justice," Pet'r Brief at 66–73, he relied almost completely on Massachusetts case law to support these claims. Pet'r Brief at 66–72. As such, any federal issues surrounding these claims were essentially hidden from the Supreme Judicial Court. *See, e.g., Nadworny*, 872 F.2d at 1099. Moreover, while Laurore made general references to constitutional errors in his brief headings and made a few cursory passing references to federal constitutional law in the brief itself, Pet'r Brief at 66, 68–70, 72, he made "no reference to any specific provision of the Constitution or to any right specifically guaranteed by the Constitution." *Gagne*, 835 F.2d at 7; *see also Adelson*, 131 F.3d at 263 (holding that "mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim").

Specifically, Laurore cited two federal cases in his brief, but neither of the citations was sufficiently on point to alert the Supreme Judicial Court to the "embedded constitutional claim." *Adelson*, 131 F.3d

at 263; *see also Nadworny v. Fair*, 872 F.2d 1093, 1098 ("A claim in state court may well present an echo of a federal claim, but one not likely to alert the court to the claim's federal nature.") (internal quotation marks omitted). First, Laurore cited to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) at the end of his assault instruction argument. Pet'r Brief at 68. *Chapman*, however, involved the violation of a defendant's Fifth Amendment right to remain silent, and the pages to which Laurore cited do not address a constitutional right but rather a standard of review. *Chapman*, 386 U.S. at 23–24, 87 S.Ct. 824. While Laurore now claims that the admission of the first page of the abuse protective order violated his Fifth Amendment rights, this was not made clear in his brief. Furthermore, the brief did not relate *Chapman* to the abuse protective order claim—rather, it was cited in support of his assault instruction claim. Therefore, Laurore's "unexplained inclusion" of *Chapman* "did not alert the Commonwealth courts to the federal nature of his claim." *Gagne*, 835 F.2d at 8.

Second, in his argument about the trial judge's failure to instruct on unanimity, Laurore included in his brief a reference to *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). Pet'r Brief at 68. This case, however, stands for the proposition that unanimous jury verdicts in criminal cases are *not* required by the United States Constitution. Rather than furthering a federal claim, this citation "underscored that [the petitioner] was pressing a purely state claim." *Casella v. Clemons*, 207 F.3d 18, 21 (1st Cir.2000).

In short, Laurore's arguments in support of Grounds Five, Six, and Seven were grounded in state law and the few references to the federal constitution and federal cases were nothing more than "some

makeshift needles in the haystack of the state court record" that may have "hint[ed] that a theory may be lurking in the woodwork" but were insufficient to satisfy the exhaustion requirement. *Martens*, 836 F.2d at 717; *see also Nadworny*, 872 F.2d at 1101 (stating that "an isolated federal-law bloom in a garden thick with state-law references" will not serve to exhaust the claims and "[t]here is more to petitioner's burden than citing a federal case or two"). Laurore did not leave enough "spoor for the cognoscenti so that the [Court] may observe where petitioner's path logically leads—and whether he lighted the way adequately for the state tribunal" to see the federal claim. *Nadworny*, 872 F.2d at 1099. Thus, the Court rules that Grounds Five, Six, and Seven of Laurore's Amended Petition are unexhausted.

 Because Laurore's habeas petition contains both exhausted and unexhausted claims and because Laurore is a *pro se* petitioner, this Court grants Laurore leave to amend his habeas petition to present only those claims that have been exhausted.[2] *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982);

*Nowaczyk v. Warden N.H. State Prison*, 299 F.3d 69, 76 (1st Cir.2002) ("[T]he state prisoner with a mixed petition is entitled to proceed with his exhausted claims if he agrees to amend his petition."); *Rosado v. Allen*, No. Civ.A.02–10359–DPW, 2003 WL 1475031, at *4 (D.Mass. March 20, 2003) (Woodlock, J.) (providing petitioner approximately twenty days to amend his habeas petition to include only those claims that had been exhausted). In the event that Laurore declines to amend his petition, he may return to state court to exhaust those claims the Court has herein ruled are unexhausted. *Nowaczyk*, 299 F.3d at 75–76 (interpreting *Rose* to direct "district courts to offer a choice to state prisoners with mixed petitions: they could either accept dismissal without prejudice and return to state court to exhaust the claims presented in their § 2254 petitions, or they could amend those petitions to remove any unexhausted claims."). Given that Laurore's original habeas petition was timely filed and there is a possibility that the filing of a second petition after exhaustion has occurred could be untimely,[3] the Court will stay further proceedings pending exhaustion of state remedies. *Nowac-*

**2.** It is true that this Court has already once allowed Laurore to amend his complaint. Laurore's motion to amend and his subsequent Amended Petition, however, were filed before the Court had issued this opinion on the matter. Laurore, acting *pro se*, shall now have an opportunity to amend his complaint knowing which claims the Court has ruled are unexhausted.

**3.** Final judgment by the Supreme Judicial Court was issued on June 6, 2002. The statute of limitations began to run, however, on September 6, 2002, after the ninety-day period for filing a petition for writ of certiorari from the United States Supreme Court had expired. *Nowaczyk*, 299 F.3d at 71 (agreeing that the ninety-day time period for filing a writ of certiorari to the United States Supreme Court tolls the statute of limitations); *Donovan v. Maine*, 276 F.3d 87, 91 (1st Cir. 2002) ("[S]ection 2244(d)(1) provides for toll-

ing during the ninety-day period in which the petitioner would have been allowed to ask the United States Supreme Court to grant certiorari to review the [state court's] denial of his direct appeal (the fact that the petitioner did not seek certiorari is immaterial)."). The pendency of a federal habeas petition does not toll the statute of limitations. *Duncan v. Walker*, 533 U.S. 167, 181, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (holding that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)"). Therefore, were the Court to dismiss without prejudice today, it would leave Laurore with a total of only a few months to return to state court to exhaust his claims (which *would* toll the clock) and then to come back to this Court and file a new petition.

*zyk*, 299 F.3d at 79 (noting that granting a stay is "the preferable course in many cases involving mixed petitions—and it may be the only appropriate course in cases in which an outright dismissal threatens to imperil the timeliness of a collateral attack"); *Delaney v. Matesanz*, 264 F.3d 7, 13 n. 5 (1st Cir.2001) ("We especially commend [the use of stays by district courts] in instances in which the original habeas petition, though unexhausted is timely filed, but there is a realistic danger that a second petition, filed after exhaustion has occurred, will be untimely."); *Duncan v. Walker*, 533 U.S. 167, 182–3, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring) ("[I]n our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies.").[4]

## III. CONCLUSION

For the foregoing reasons, Spencer's Motion to Dismiss Petitioner's Amended Petition for Writ of Habeas Corpus [Docket No. 22] is DENIED and Laurore's Motion For Reconsideration [Docket No. 24] is Granted in Part upon the following terms. Laurore may file a Motion to Amend his petition to drop the unexhausted claims within 30 days of the date of this decision. If Laurore does file such Motion within the 30 day time limit, Spencer shall have, as requested in its original Motion to Dismiss, [Docket No. 12] at n. 1, 30 days (from receipt of Laurore's Motion) to file a fully supported Motion to Dismiss the re-

maining exhausted claims on the merits. Should Laurore not file such Motion, he may file a new habeas petition after he properly exhausts his state-court remedies. The case will be administratively closed until the happening of the earlier of these two events.

SO ORDERED.

---

4. The First Circuit in *Nowaczyk* and *Delany* commended stays over dismissals when timing is critical and the petitioner has requested a stay. While here there has been no such request by petitioner, it is clear that deciding whether to stay or dismiss is within the Court's discretion. *Nowaczyk*, 299 F.3d at 80 ("[A] district court may choose between a stay and dismissal when a flaw in the 2254 petition makes it necessary to delay a decision through some means."). Moreover, here the petitioner is *pro se*. Therefore, even though Laurore has not actually requested a stay, the Court, in its discretion, deems it prudent to grant one.