COMMONWEALTH VS. LEONARD H. ADELSON.

No. 95-P-1226.

Middlesex. January 12, 1996. - June 13, 1996.

Present: DREBEN, GREENBERG, & FLANNERY, JJ.

*Larceny. Jurisdiction,* Of crime. *Practice, Criminal,* Venue, Instructions to jury.

At a criminal trial a District Court judge correctly denied a defendant's motion to dismiss the five-count complaint of larceny by check on the ground of lack of jurisdiction where the goods exchanged for the check were received by the defendant in Massachusetts and where the checks were knowingly written in Massachusetts without sufficient funds with intent to procure the goods. [588-589]

Venue of a trial of a complaint for larceny by check in which all the complaining witnesses were from out of State was properly laid in Middlesex County where the defendant resided in Middlesex County, the bank on which the checks were drawn was located there, and the defendant made telephone calls from his home in furtherance of procuring the goods in issue. [589]

Where at the trial of a complaint for larceny by check there was no evidence to give rise to a "reasonable and possible" inference that the defendant's fraudulent intent arose other than in Massachusetts, the defendant was not entitled to have the issue of jurisdiction submitted to the jury. [589-590]

COMPLAINTS received and sworn to in the Cambridge Division of the District Court Department on February 9, 1994, and April 29, 1994.

On transfer to the jury session of that division, a pretrial motion to dismiss was heard by *Dyanne J. Klein, J.,* and the cases were tried before her.

*Francis J. DiMento* for the defendant.

*Scott Glauberman (Geraldine C. Griffin,* Assistant District Attorney, with him) for the Commonwealth.

GREENBERG, J. With what some might call audacity but most would term merely more confidence than the scheme

inspired, the defendant went to Russia to plumb the possibilities of marketing videotapes of prizefights arranged by the defendant between Russian and American fighters. To promote the enterprise, he obtained the services of two Arizona residents, Steven Eisner and Lawrence Meyers. Refusal of a Massachusetts bank to honor checks payable to them, drawn on the defendant's Cambridge bank account, became the source of a criminal complaint — in five counts — for larceny by check. See G. L. c. 266, § 37.[1] Before the trial began, the defendant moved to dismiss the complaint because (1) the court lacked territorial jurisdiction and (2) venue was improperly laid in Middlesex County. At the close of the Commonwealth's case, upon the same grounds, the defendant asked the judge to dismiss the complaints in his discretion under Mass.R.Crim.P. 25(b)(1), 378 Mass. 896 (1979). Both motions were denied, and the six-person jury found the defendant guilty of three of the five counts. Whether a Massachusetts court has territorial jurisdiction over the offenses is the principal issue of the appeal.

We decide that the trial judge was warranted in denying the defendant's motion to dismiss the complaint. The venue question we also resolve in favor of the Commonwealth. We sketch the facts, mostly undisputed, as they relate to the jurisdictional issue.

The defendant lived in Weston (Middlesex County) and ran an operation called American International Boxing out of an office located in Wellesley, a town situated within the confines of Norfolk County. He first spoke to Eisner about his idea in early 1993. Eisner had an office in Arizona, and their continued collaboration resulted in a contract. The de-

---

[1]That statute, as amended by St. 1955, c. 133, provides in pertinent part, as follows:

"Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft or order for the payment of money upon any bank or other depositary, with knowledge that the maker or drawer has not sufficient funds or credit at such bank or other depositary for the payment of such instrument, although no express representation is made in reference thereto, shall be guilty of attempted larceny, and if money or property or services are obtained thereby shall be guilty of larceny."

fendant was to underwrite the project and solicit Russian prize fighters while Eisner was to choose appropriate locations for the bouts and assume promotional responsibilities. That chore included procuring a salaried "matchmaker" who would find suitable American opponents for the Russians. As stated, their joint venture was supposed to produce videotapes to be sold, presumably at a profit, to Russian television producers.

On March 23, 1993, plans to film the first set of matches in Nevada went awry when the defendant failed to pay the production company that Eisner hired. Early the following month, Eisner put the defendant in touch with Southwest Television Production Services, Inc., a company run by Lawrence Meyers of Phoenix, Arizona. Work ensued on the production end, but bills for Southwest's services, as well as those of other providers, were not paid.

A series of frantic telephone requests for money were made to the defendant, just prior to a second set of fights scheduled at Laughlin, Nevada, for April 23, 1993. It is not necessary to recount, in detail, the nature of the calls except to state that Eisner and Meyers had distinct reservations about what would happen if the defendant's end of the deal soured. The calls eventuated in the defendant sending two separate checks to Eisner both dated April 19, 1993, drawn on the defendant's account at the Cambridge Trust Company: one for $7,500, and another for $2,500. Two days later, the defendant wrote another check from the same account to Meyers in the amount of $5,000 as part payment for videotaping the matches. These checks, eventually dishonored, form the basis of the defendant's convictions.

Meanwhile, on the basis of receipt of the checks, Eisner and Meyers went ahead with the project. Two tapes were made, one of the bouts themselves and another of "human interest" segments, including minibiographies and interviews with the boxers and footage of the Las Vegas area, to enhance the Russian viewers' interest in the bouts. The first tape was sent to the defendant in Massachusetts, but the second was held back, perhaps as security for the unpaid balance owed to Eisner and Meyers for services not covered by the three checks.

One thing about the "sweet science" upon which all boxing aficionados agree is that fights used to be better; that may

account for the sudden death of the venture.[2] The defendant never made any Russian deals or paid vendors balances due for services. In July, 1993, Eisner and Meyers sent written demands that the defendant make good on his dishonored checks.[3] No reimbursement was forthcoming.

1. *Jurisdictional issues.* After the Legislature made it a crime to obtain services through the use, with intent to defraud, of a check drawn against insufficient funds (G. L. c. 266, § 37; see note 1, *supra*),[4] decisional law established a generally accepted rule: the crime of larceny, which includes the element of asportation, may be punished in Massachusetts if the thief brings the stolen goods into this State after acquiring them outside of the jurisdiction. *Commonwealth* v. *White*, 358 Mass. 488 (1970). *Commonwealth* v. *Carroll*, 360 Mass. 580, 585 (1971). The interplay of evidential factors shaping the decision in this case draw upon the same principle. The testimony of the complainants and the defendant, himself, establishes that all of the out-of-State services given in exchange for the bogus checks (e.g., arranging prize fights, the associated promotional efforts, sale of tickets to the local audience, videotaping and editing the final film) generated a single product: a videotape sent to the defendant in Massachusetts.

There is another factor that provides Massachusetts a jurisdictional basis in this case. The gist of the offense of larceny by check is an implied representation that the maker has "sufficient funds or credit at [his] bank for the payment of the checks drawn by him 'upon' that bank." *Commonwealth* v. *Ohanian*, 373 Mass. 839, 843 (1977). Knowledge of the insufficiency of funds or credit at the drawee bank is an essential element of the crime of larceny by check. *Id.* at 841-842. G. L. c. 266, § 37. While it is true, as the defendant argues, that the bank's act of dishonoring the checks is not the act that confers jurisdiction, see *Commonwealth* v. *Klein*, 400 Mass. 309, 313 (1987), the combination of knowingly

---

[2]See, e.g., Leibling, Neutral Corner 31 (1990).

[3]Failure to pay within two days after notice is not an element of the offense but only a trigger for the prima facie showing of fraudulent intent. *Commonwealth* v. *Klein*, 400 Mass. 309, 312-313 (1987).

[4]The "Old Bad Check Act," as inserted by St. 1937, c. 99, applied only to the fraudulent drawer of a check who in exchange received money or property.

writing a "bad check" with intent to secure possession of the tapes in Massachusetts provides ample basis to conclude that a crime was committed here. *Commonwealth* v. *Solari*, 12 Mass. App. Ct. 993 (1981). Even though most of the promotional activity occurred outside Massachusetts, "acts done outside a jurisdiction but intended to produce and [that] do produce detrimental effects within it, justify a State in punishing the cause of the harm as if the defendant had been present at the effect, if the State succeeds in getting the defendant within its power." Smith, Criminal Practice and Procedure § 42 (2d ed. 1983).

2. *Venue.* Since the statute under which the defendant was charged does not prescribe any particular venue for the trial of a charge of larceny by check, "[t]he venue question . . . is one of common law within any limitation that art. 13 [of the Massachusetts Declaration of Rights] may impose." *Commonwealth* v. *Brogan*, 415 Mass. 169, 173 (1993). That constitutional provision requires that the trial be held "in the vicinity" where the events are alleged to have occurred. *Id.* at 172. "One concept underlying art. 13 is that fairness to a defendant normally requires that the defendant not be transported far away for trial but rather be tried where there is access to witnesses and evidence for the defense." *Id.* at 174. Although not every act that gave rise to Massachusetts's jurisdiction occurred in Middlesex County, the defendant cannot maintain that he was unduly hampered by being required to appear there. Contrast *Smith* v. *Commonwealth*, 420 Mass. 291 (1995) (trial in neighboring county produced different racial composition of potential jury pool). All of the complaining witnesses came from various States to appear in Middlesex County, where the defendant resides. The bank on which the checks were drawn is located in Middlesex County; the address on the checks is the defendant's home address in Middlesex County; and the defendant made frequent telephone calls from his home in furtherance of procuring the goods and services at issue. We think, therefore, that the defendant may not rely on improper venue as a ground for reversing his conviction.

3. *Lack of instruction on the issues of jurisdiction and venue.* Merely because the defendant raised the issue of jurisdiction does not automatically entitle him to have the issue submitted to the jury. In spite of the judge's earlier rulings on the issue,

the defendant contends that the evidence raised factual issues for the jury to resolve, citing *Commonwealth* v. *Gilbert*, 366 Mass. 18, 28 (1974) ("Whether a criminal act occurred within the territorial boundaries of the Commonwealth, and thus whether the Commonwealth has jurisdiction over the individual charged with that act, is a question of fact to be settled by proof"). We believe that the judge was correct in not permitting the jury to deliberate as to that part of the complaints as involved jurisdiction. None of the relevant facts as developed during trial gave rise to a "reasonable and possible" inference that the defendant's fraudulent intent to obtain the complainants' services arose outside the confines of Massachusetts. Contrast *Commonwealth* v. *Travis*, 408 Mass. 1, 7-10 (1990). Thus the issue was properly within the province of the judge, as matter of law. Cf. *Commonwealth* v. *Lanoue*, 326 Mass. 559, 560 (1950).

There is nothing else in the defendant's other criticisms of the judge's evidential rulings, or his charge to the jury, that merits discussion.

*Judgments affirmed.*