USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 97-1536 LEONARD H. ADELSON, Petitioner, Appellant, v. JAMES V. DIPAOLA, Respondent, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Kimberly Homan, with whom Robert L. Sheketoff, Sheketoff & ______________ ___________________ ___________ Homan, Francis J. DiMento, and DiMento & Sullivan were on brief, _____ __________________ __________________ for appellant. William J. Meade, Assistant Attorney General, Commonwealth _________________ of Massachusetts, with whom Scott Harshbarger, Attorney General, _________________ was on brief, for appellee. _________________________ December 12, 1997 _________________________ SELYA, Circuit Judge. Petitioner-appellant Leonard H. SELYA, Circuit Judge. _____________ Adelson hatched a plan to film bouts between Russian and American pugilists and market the resultant videotapes to Russian television stations. The undercapitalized venture was doomed from the opening bell. In the aftermath of its collapse, the Commonwealth of Massachusetts successfully prosecuted the petitioner on charges of larceny by check. After a fruitless pursuit of appellate remedies in the state courts, the petitioner sought habeas corpus relief in a federal forum, naming a state correctional official as the respondent. In an ore tenus ___ _____ decision, the district court dismissed the petition on the ground that it contained an unexhausted claim. The petitioner appeals. We affirm. I. I. __ The Tale of the Tape The Tale of the Tape ____________________ Early in 1993, the petitioner, a resident of Massachusetts, teamed up with Steven Eisner and Lawrence Meyers, both residents of Arizona, to promote and videotape prizefights between American and Russian boxers. The petitioner's responsibilities included underwriting the project, supplying Russian boxers, and marketing videotapes of the bouts, for which he would garner the lion's share of the anticipated profits. Eisner was to receive a monthly salary, reimbursed expenses, and a lesser share of the profits for recruiting the American pugilists and handling the logistics of the matches. Meyers agreed to film the fisticuffs in exchange for an up-front payment 2 of $5,000 and a further payment in approximately the same amount plus expenses (e.g., editing costs), due upon production of commercially acceptable videotapes of a particular card of bouts. In April 1993, the petitioner transmitted a check for $5,000 to Meyers as an initial payment and sent two checks for $2,500 and $7,500, respectively, to Eisner. All three checks were drawn on the petitioner's account at Cambridge Trust Company, a Massachusetts bank, and were intended to effect payment for services rendered or to be rendered in connection with boxing matches scheduled to take place in Laughlin, Nevada on April 28, 1993. The payees negotiated the checks. In due course, however, Cambridge Trust returned them, unhonored, explaining that the account lacked sufficient funds. The petitioner attributed the incident to a bank error and persuaded Eisner and Meyers to go forward with the promotion. The three men met in Laughlin on April 28. At that time, the petitioner gave Meyers $3,000 in cash and promised to pay the balance of his fee by wire transfer the next day. Although that transfer never materialized, the petitioner did send a total of $13,000 to Eisner in mid-May. Eisner diverted $5,000 from this sum to Meyers to cover editing expenses. Despite the fact that he had not been paid in full, Meyers performed the editing work and delivered a single videotape to the petitioner in Massachusetts with the hope that the petitioner 3 could sell it and thereby make good on the bounced checks.1 Meyers's hopes soon were dashed: the petitioner's efforts to market the tape in Russia proved unavailing and he thereafter turned a blind eye to the insistent demand letters forwarded by his erstwhile partners. To make a tedious tale tolerably terse, Eisner and Meyers eventually called the three dishonored checks to the attention of the Massachusetts authorities. In turn, those financial instruments formed the predicate for three counts of larceny by check. See Mass. Gen. Laws ch. 266, 37 (1990). ___ Trial, conviction, and the imposition of a two-year prison sentence followed apace.2 The Massachusetts Appeals Court affirmed the conviction, see Commonwealth v. Adelson, 666 N.E.2d ___ ____________ _______ 167 (Mass. App. Ct. 1996), and the Massachusetts Supreme Judicial Court (SJC) denied further appellate review. 670 N.E.2d 966 (Mass. 1996). Undeterred by his lack of success in the early rounds, the petitioner applied for habeas corpus relief in the United States District Court for the District of Massachusetts. See 28 ___ U.S.C. 2254 (1994 & Supp. II 1996). He posited that the state trial judge's decision to withhold from the jury the question whether Massachusetts courts had subject matter jurisdiction  ____________________ 1While the exact amount of money that Adelson owed Meyers is disputed by Meyers's reckoning, the petitioner owed him $5,955 for services rendered after all sums actually received had been credited it is pellucid that Adelson never paid Meyers in full for the videotaping services. 2Execution of the sentence has been stayed. 4 relieved the prosecution of its burden to prove each element of the criminal charges and thus violated his right to due process of law under the Fourteenth Amendment. The petitioner bottomed this claim of constitutional error on an assertion that Massachusetts case law deems jurisdiction a substantive element of every criminal offense and that the prosecution therefore must prove its existence beyond a reasonable doubt. The district court dismissed the petition without reaching the merits, concluding that Adelson inadequately presented his putative federal claim in the Massachusetts courts. Judge Woodlock did, however, grant a certificate of appealability. See 28 U.S.C. 2253(c); Fed. R. App. P. 22(b). ___ This appeal ensued. II. II. ___ Exhaustion Exhaustion __________ In recognition of the state courts' important role in protecting constitutional rights, the exhaustion principle holds, in general, that a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application. See Rose v. Lundy, 455 ___ ____ _____ U.S. 509, 518-19 (1982). Although exhaustion is not a jurisdictional bar to federal habeas review of a state court conviction, it is "the disputatious sentry [that] patrols the pathways of comity" between the federal and state sovereigns. Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989). With few ________ ____ 5 exceptions none of which are applicable here federal courts have enforced the exhaustion requirement consistently and rigorously. See, e.g., Rose, 455 U.S. at 518; Martens v. ___ ____ ____ _______ Shannon, 836 F.2d 715, 718 (1st Cir. 1988). Thus, a habeas _______ petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of this federal claim. See Picard v. Connor, 404 U.S. 270, ___ ______ ______ 276-77 (1971); Nadworny, 872 F.2d at 1098. To carry this burden, ________ the petitioner must demonstrate that he tendered each claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994). ______ ______ Although fair presentment of a claim is obligatory, there are myriad ways in which that phenomenon can be accomplished. See Nadworny, 872 F.2d at 1097-98 (noting at least ___ ________ five ways in which a habeas petitioner satisfactorily can present a federal claim to the state courts). But the flexibility inherent in this multi-channeled approach does not transform the exhaustion requirement into an empty formality. A federal court's calculation of the probability that a reasonable jurist would have discerned the federal question from a perusal of the petitioner's relevant state-court filings is not a matter of guesswork. Rather, that calculation is informed "by trappings  specific constitutional language, constitutional citation, appropriate federal precedent, substantive constitutional analogy, argument with no masking state-law character, and the 6 like." Id. at 1101. The fewer the trappings that adorn a ___ petitioner's state-court filings, the less likely that we will find his federal claim to have been exhausted. Although these general principles provide a modicum of guidance, our de novo appellate review of a district court's dismissal of a habeas petition for want of exhaustion is necessarily case-specific. See id. at 1095. We turn, then, to ___ ___ the particulars of the case at hand. In the district court, the petitioner, citing cases such as Schad v. Arizona, 501 U.S. 624, 638 (1991), and In re _____ _______ _____ Winship, 397 U.S. 358, 364 (1970), articulated his constitutional _______ claim in the following terms: (1) Massachusetts case law defines jurisdiction as a substantive element of all criminal offenses; (2) due process requires the prosecution to prove all the substantive elements of an offense beyond a reasonable doubt; (3) and therefore, in a Massachusetts criminal case, the prosecution must prove jurisdiction beyond a reasonable doubt.3 Given this syllogism, the petitioner posited that the state trial judge's preemption of the jurisdictional issue and his concomitant refusal to instruct the jury on it relieved the prosecution of its due-process-imposed burden to prove all the substantive  ____________________ 3We take no view of the petitioner's characterization of Massachusetts law. We note, however, that if Massachusetts has not made jurisdiction a substantive element of the larceny by check offense, then the petitioner's claim would appear to turn on alleged errors of state, not federal, law. If this were so, then federal habeas review would not be available to him. See ___ Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, _______ _______ _____ _______ 497 U.S. 764, 780-81 (1990); Puleio v. Vose, 830 F.2d 1197, 1204 ______ ____ (1st Cir. 1987). 7 elements of the charged crimes. This is an intriguing argument, and one that clearly states a federal constitutional claim. Whether the claim would have merit is, however, a different issue and one which, absent exhaustion, we need not decide. The fly in the ointment is that Adelson never pitched this argument to the Massachusetts courts. This is not to say that the argument is completely alien to the state court record. In his brief to the Massachusetts Appeals Court and in his unsuccessful application to the SJC for further appellate review, the petitioner set forth the factual underpinnings of his federal claim. But setting forth the factual underpinnings of a claim is insufficient, in and of itself, to constitute fair presentment of that claim. A habeas petitioner must also elucidate the legal foundation of his federal claim. See Nadworny, 872 F.2d at 1096; ___ ________ Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987). It is on these _____ ____ shoals that the petitioner's quest founders. Exhaustion obligations mandate that a habeas petitioner present, or do his best to present, his federal claim to the state's highest tribunal. See United States ex rel. Kennedy v. ___ ______________________________ Tyler, 269 U.S. 13, 17 (1925); Mele v. Fitchburg Dist. Court, 850 _____ ____ _____________________ F.2d 817, 820 (1st Cir. 1988). Accordingly, the decisive pleading is the application for further appellate review, and we must determine whether the petitioner fairly presented the federal claim to the SJC within "the four corners" of that application. Mele, 850 F.2d at 823. In this case, the ____ petitioner argued to the SJC, as he did to the Massachusetts 8 Appeals Court, that the Commonwealth's evidence could not support criminal jurisdiction and that the trial judge at least should have submitted the jurisdictional issue to the jury but he neither premised these arguments on federal constitutional grounds nor provided any signposts that pointed toward a due process pathway to reversal of his conviction. The petitioner cited no federal cases, made no mention of the Fourteenth Amendment, and eschewed all references to the concept of due process. He instead relied only upon Massachusetts case law and debated the assignment of error exclusively in state-law terms. Under these circumstances, we cannot say that the petitioner exhausted his due process claim. It is true, of course, that deployment of federal authority sometimes is not a prerequisite to adequate presentation of a federal claim to the state courts. See Scarpa, 38 F.3d at 7. Nevertheless, such ___ ______ occasions will be few and far between, and they invariably will involve some suitable surrogate for explicit reference to federal authorities, say, an emphasis on federal due process rights in the petitioner's cited state cases or an analysis of state law that adopts or parallels federal constitutional analysis. See ___ Lanigan v. Maloney, 853 F.2d 40, 44 (1st Cir. 1988); Dougan v. _______ _______ ______ Ponte, 727 F.2d 199, 201 (1st Cir. 1984); cf. Anderson v. _____ ___ ________ Harless, 459 U.S. 4, 7 n.3 (1982) (per curiam) ("We doubt that a _______ defendant's citation to a state-court decision predicated solely on state law ordinarily will be sufficient to fairly apprise a reviewing court of a potential federal claim merely because the 9 defendant in the cited case advanced a federal claim.") (emphasis _____ in original). No such surrogate dwells in the present record. Indeed, in his application for further appellate review the petitioner did not even attempt to analogize his state-law claims of error to a due process violation. This is simply not enough to alert even the most perspicacious of jurists to the embedded constitutional claim. See Nadworny, 872 F.2d at 1101. ___ ________ In a desperate effort to overcome the fact that any supposed presentation of his federal claim to the Massachusetts courts is masked, or, more accurately, completely camouflaged, by a dense state-law overlay, the petitioner maintains that his use of the phrase "proof beyond a reasonable doubt" conjured up constitutional visions perceptible to any reasonable jurist, and, thus, saves the day. We do not agree. "Rhetoric arguing that a claim previously asserted without federal citation or other conspicuous federal emblemata nonetheless fell within some hypothetical `mainstream' of constitutional litigation has an oxymoronic quality." Id. at 1098. Consequently, we regularly ___ have held, and today reaffirm, that the mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim. See Gagne, ___ _____ 835 F.2d at 8; Dougan, 727 F.2d at 201. In all events, to the ______ extent that the "proof beyond a reasonable doubt" mantra might raise a constitutional eyebrow, the petitioner invoked it only once, in passing, in his brief to the Massachusetts Appeals 10 Court, and not at all in his application to the SJC. As we have warned before, "scatter[ing] some makeshift needles in the haystack of the state court record" is not enough to ground a claim of exhaustion. Martens, 836 F.2d at 717. _______ The lack of fair presentment ends the matter. While there are occasional exceptions to the exhaustion requirement (say, where exhaustion plainly would be futile or where the state has waived the requirement), the petitioner does not, and cannot, argue that any apply in this instance. On the other hand, while the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified in scattered sections of 28 U.S.C.), changes preexisting habeas law by conferring upon federal courts express authorization to "den[y a habeas petition] on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," 28 U.S.C. 2254(b)(2), we do not think that this case is an appropriate candidate for the use of such power. The petitioner's federal claim flows from an apparently novel interpretation of Massachusetts law. Assuming that he is not now procedurally barred from presenting his claim to the Massachusetts courts a matter on which we express no opinion  we believe that those tribunals are better situated to test the petitioner's state-law hypothesis. See Gagne, 835 F.2d at 10. ___ _____ III. III. ____ Conclusion Conclusion __________ We need go no further. Habeas counsel often confront 11 an inhospitable legal landscape, and the problem is complicated by the intricacies of the exhaustion requirement. We must, however, apply that requirement impartially. Here, only the most intrepid judicial spelunker could have picked a path through the petitioner's state-law-strewn grotto and excavated a buried claim of constitutional error. Because the petitioner did not present his federal claim to the Massachusetts courts "face-up and squarely," Martens, 836 F.2d at 717, the district court properly _______ dismissed his habeas petition, without prejudice, for want of exhaustion. Affirmed. Affirmed. ________ 12