**Rocky KILLELA, Petitioner,**

v.

**Timothy HALL, Superintendent, et al., Respondents.**

**No. Civ.A. 99–30123–MAP.**

United States District Court, D. Massachusetts.

Feb. 3, 2000.

---

Greg T. Schubert, Springfield, MA, for Rocky Killela, petitioner.

Pamela L. Hunt, Joseph T. Thai, Attorney General's Office, Criminal Bureau, Boston, MA, William D. Weinreb, Attorney General's Office, Criminal Division, Boston, MA, for Timothy Hall, Superintendent, respondent.

Pamela L. Hunt, Joseph T. Thai, William D. Weinreb, (See above), for Thomas Reilly, Attorney General of Massachusetts, respondent.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION WITH REGARD TO RESPONDENTS' MOTION TO DISMISS PETITIONER'S HABEAS CORPUS PETITION* (Docket Nos. 12 & 20)

PONSOR, District Judge.

Upon *de novo* review, the Report and Recommendation of Magistrate Judge

Kenneth P. Neiman dated December 3, 1999 is hereby ADOPTED. As Magistrate Judge Neiman's memorandum carefully demonstrates, the state court's decision here properly rests on petitioner's procedural default, independent of any Constitutional question. Petitioner has demonstrated neither "cause and prejudice" nor any significant evidence of a miscarriage of justice. For this reason, set forth in more detail in the Report and Recommendation, the respondents' Motion to Dismiss is hereby ALLOWED.

*REPORT AND RECOMMENDATION WITH REGARD TO RESPONDENT'S MOTION TO DISMISS PETITIONER'S HABEAS CORPUS PETITION (Docket No. 12)*

December 3, 1999

NEIMAN, United States Magistrate Judge.

Rocky Killela ("Petitioner"), claiming that he is being unlawfully imprisoned by the Commonwealth of Massachusetts, has filed a petition for a writ of habeas corpus. Respondents have moved to dismiss the petition on three separate procedural grounds: that the petition is untimely, that one of Petitioner's claims has not been adequately exhausted, and that the "procedural default rule" bars the petition. Respondents' motion to dismiss has been referred to the court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). As detailed below, the court agrees with Respondents' third argument and, therefore, recommends that the petition be dismissed on this limited basis.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

On November 26, 1986, a jury found Petitioner guilty of armed assault in a dwelling house, assault with intent to murder, kidnapping, armed assault and battery, and carrying a dangerous weapon. He is currently serving a thirty-five to fifty year sentence. The charges arose from an incident on May 29, 1986 in which Petitioner stabbed his pregnant girlfriend at her home, severely wounding her and killing her fetus, then kidnapped and assaulted two other individuals at knife point during his flight from the home. Four days prior to the incident, Petitioner was in an automobile accident in which he suffered severe brain trauma.

As with many criminal convictions, post-trial proceedings here have consumed many years. On direct appeal, Petitioner's convictions were affirmed by the Massachusetts Appeals Court. Then, on June 3, 1988, the Massachusetts Supreme Judicial Court rejected Petitioner's application for leave to obtain further appellate review, commonly referred to as an "ALOFAR." Nearly three years later, Petitioner collaterally attacked the convictions by filing a *pro se* motion for a new trial. That motion was denied by the trial court on June 19, 1991, and subsequently affirmed by the Appeals Court. The Supreme Judicial Court rejected Petitioner's second ALOFAR on December 28, 1992.

On September 23, 1994, Petitioner filed a pleading that bears directly on the instant petition, namely, a second *pro se* motion for a new trial. That motion, which was amended on November 5, 1996, after Petitioner had been appointed counsel, made two allegations: that trial counsel was ineffective for failing to present to the jury a "post-concussion syndrome" defense, and that the trial court erroneously failed to conduct a hearing *sua sponte* on Petitioner's competency to stand trial. The trial court denied Petitioner's second motion for a new trial in a written opinion dated November 14, 1996. Meanwhile, on April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), discussed in detail below.

On May 17, 1997, more than six months after the trial court's November 14th ruling, Petitioner filed a motion for reconsideration which the trial court denied on June 6, 1997. On September 24, 1997,

Petitioner appealed the denials of both the second new trial motion and the motion for reconsideration. In an eight page opinion dated May 22, 1998, the Appeals Court affirmed the denials. (Resp'ts' Supplemental Answer (Docket No. 15), No. 16.) The crux of the Appeals Court's opinion was that, pursuant to Rule 30(c)(2) of the Massachusetts Rules of Criminal Procedure, Petitioner had waived the claims made in his motions by not raising them in either his direct appeal or his first motion for a new trial. The Supreme Judicial Court rejected Petitioner's final ALOFAR, filed on June 12, 1998, on July 27, 1998.

On June 15, 1999, Petitioner filed the instant petition for habeas corpus, raising the same two claims that he asserted in his second motion for a new trial: ineffective assistance of counsel and failure of the trial judge to hold a competency hearing. On July 14, 1999, Respondents moved to dismiss the petition on three separate procedural grounds: that the petition is untimely, that one of Petitioner's claims has not been adequately exhausted and that the "procedural default rule" bars the petition. Petitioner filed his opposition to the motion to dismiss on October 1, 1999.

## II. *STANDARD OF REVIEW*

The court construes Respondents' motion to dismiss as though it were brought under Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) is designed to test whether a complaint properly states a claim upon which relief may be granted. A Rule 12(b)(6) motion to dismiss requires a court to accept "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). *See also Pihl v. Massachusetts Dep't of Educ.,* 9 F.3d 184, 187 (1st Cir. 1993). The fact that the "complaint" at issue is a petition for a writ of habeas corpus does little to change the analysis. *See Rose v. Lundy,* 455 U.S. 509, 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). A mo-

tion to dismiss is the appropriate vehicle for challenging a petitioner's claims as legally insufficient, including claims that he failed to comply with procedural requirements. *See generally id.*

## III. *DISCUSSION*

Respondents make three procedural arguments as to why the petition should be dismissed: the petition is untimely, one of Petitioner's claims has not been adequately exhausted and the "procedural default rule" bars the petition. In the court's view, neither of Respondents' first two arguments justifies dismissal. However, the court does recommend that the petition be dismissed on the third ground, the "procedural default" rule. Accordingly, the court will discuss Respondents' third argument first.

### A.

 Because of comity and federalism concerns, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal questions and adequate to support the prisoner's continued custody. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A valid invocation of this procedural default rule "forecloses federal habeas review unless the petitioner can demonstrate cause for the default and prejudice stemming therefrom, or, alternatively, unless the petitioner can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice." *Burks v. Dubois,* 55 F.3d 712, 716 (1st Cir.1995) (citations omitted).

 In the case at bar, the Massachusetts Appeals Court, the "last reasoned opinion by a state court," *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), explicitly rejected

Petitioner's claims by applying an independent rule of state procedure. Specifically, the Appeals Court considered both of Petitioner's claims "waived" pursuant to Rule 30(c)(2) of the Massachusetts Rules of Criminal Procedure because they "could have been pressed in either of his earlier appellate forays." (Resp'ts' Supplemental Answer (Docket No. 15), No. 16 at 3.) Rule 30 of the Massachusetts Rules of Criminal Procedure provides the bases for post conviction relief in state court. Rule 30(c)(2) reads as follows:

> Waiver. All grounds for relief claimed by a defendant under subdivisions (a) [unlawful restraint] and (b) [new trial] of this rule shall be raised by the defendant in his original or amended motion. Any grounds not so raised are waived unless the judge in his discretion permits them to be raised in a subsequent motion, or unless such grounds could not reasonably have been raised in the original or amended motion.

Mass.R.Civ.P. 30(c)(2).

The Supreme Judicial Court upheld the Massachusetts Appeals Court when it rejected, without opinion, Petitioner's final ALOFAR. Thus, for purposes here, it is clear that both of Petitioner's claims were dismissed on the procedural grounds of Rule 30(c)(2).

Rule 30(c)(2) is consistently enforced by the Massachusetts courts. *See Commonwealth v. Watson,* 409 Mass. 110, 565 N.E.2d 408, 409 (1991) ("A motion for a new trial may not be used as a vehicle to compel review and consideration of questions of law, on which a defendant has had his day in an appellate court, or on which he has foregone that opportunity.") (internal quotations marks omitted); *Fogarty v. Commonwealth,* 406 Mass. 103, 546 N.E.2d 354, 357 (1989) (similar). To be sure, exceptions to the rule's waiver provision are periodically made in "extraordinary" cases, *see Szczuka v. Tucker,* 3 F.Supp.2d 58, 62 (D.Mass.1997) (citing cases), for example, where there is "serious and obvious error," *Commonwealth v. Pares–Ramirez,* 400

Mass. 604, 511 N.E.2d 344, 348 (1987). Here, however, the Massachusetts Appeals Court, in invoking Rule 30(c)(2), specifically ruled that "[n]o such defect exists." (Resp'ts' Supplemental Answer (Docket No. 15), No. 16 at 5.) The court, therefore, has little choice but to conclude that Petitioner's claims are in default.

This conclusion is amply supported by case law from this jurisdiction. The First Circuit has referred to the exercise of Rule 30 as a valid procedural bar to federal habeas review. *Hall v. DiPaolo,* 986 F.2d 7, 11 (1st Cir.1993). In fact, as District Judge Patti B. Saris has explained, "[t]he First Circuit has ... explicitly endorsed Rule 30 as a consistently applied Massachusetts procedural rule that bars federal habeas corpus review, [albeit] in three unpublished (and hence uncitable) dispositions." *Szczuka,* 3 F.Supp.2d at 62 n. 3. Indeed, Judge Saris herself applied the "consistently enforced" provisions of Rule 30(c)(2), in conjunction with the procedural default rule, to a habeas petition similar to the one at issue here. *Id.* at 62.

■ In order for the court to hear the merits of a petitioner's claims in spite of the application of the state rule, he must show both cause for and prejudice from his procedural default. *See Burks,* 55 F.3d at 716 (citing *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546). "To excuse a procedural default, a petitioner's cause must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule." *Id.* at 716–17 (citing *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

■ In the case at bar, Petitioner has failed to show cause for defaulting on either of his claims and, as a result, "cannot ask the court to forgive his neglect to follow the established state rule." *Szczuka,* 3 F.Supp.2d at 62. The only evidence of "cause" offered by Petitioner to explain his procedural default is that he "was act-

ing *pro se* when he allegedly waived [his] claims by not raising them in his first motion for a new trial." (Pet'r's Opp'n (Docket No. 18) at 5.) As was explained in *Szczuka*, however, where a similar *pro se* argument was made, "[i]t is impossible . . . to give [Petitioner] the benefit of the doubt . . . and imagine an 'external' cause for default, because the failure to raise the now-defaulted claim can only 'fairly be attributed to him.'" *Id.*, 3 F.Supp.2d at 63 (quoting *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546). Further, as was stated in *McCoy v. Newsome*, 953 F.2d 1252 (11th Cir.1992), a case relied on by Petitioner, there is nothing in the claims that was "intrinsically beyond a *pro se* petitioner's ability to present." *Id.* at 1258 (citation and internal quotation marks omitted). *See also Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir.1990) ("[A] petitioner's failure to act or think like a lawyer cannot be cause for failing to assert a claim.").

█ Since there was no justifiable cause for Petitioner's procedural default, the court need not consider the element of prejudice. *See Magee v. Harshbarger*, 16 F.3d 469, 472 (1st Cir.1994). In addition, the only other avenue potentially available to Petitioner—that a refusal to hear the claims would result in a "miscarriage of justice"—is foreclosed. The "miscarriage of justice" escape hatch "is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks*, 55 F.3d at 717 (citing *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Petitioner has not argued at all, let alone "by clear and convincing evidence[,] that but for a constitutional error, no reasonable juror would have found [him] guilty." *Ortiz v. Dubois*, 19 F.3d 708, 714 (1st Cir.1994) (citation and internal quotation marks omitted).

In sum, for the limited reason that the petition is barred by the procedural default rule, the court will recommend that Respondents' motion to dismiss be allowed. The court, however, addresses Re-

spondents' alternative arguments, if for no other reason than to provide a comprehensive report and recommendation. As will be evident, the court believes that these alternative arguments do *not* provide independent bases for dismissing the instant petition.

## B.

As their first alternative, Respondents argue that the petition is barred by the one-year statute of limitations set forth in 28 U.S .C. § 2244(d)(1). That statute—the current language of which became effective with the enactment of the AEDPA on April 24, 1996—states that "[a] 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." Absent tolling, "petitioners attacking convictions or sentences which became final prior to AEDPA's effective date will be accorded the one-year post-AEDPA period, commencing on AEDPA's effective date, within which to file for [federal habeas] relief." *Rogers v. United States*, 180 F.3d 349, 355 (1st Cir.1999) (construing grace period in parallel context of AEDPA's new limitations period applicable to § 2255 petitions) (citations and internal quotation marks omitted). Accordingly, for causes of action accruing before AEDPA's effective date, the grace period for filing a § 2254 petition ended on April 24, 1997, well before Petitioner filed his petition on June 15, 1999.

█ Petitioner argues nonetheless that his petition is timely pursuant to an AEDPA tolling provision. Section § 2244(d)(2) of Title 28 states that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Because he had a properly filed application for collateral review "pending" in the Massachusetts courts at the time of AEDPA's enactment, Petitioner claims his one-year limitations period

did not commence until July 27, 1998, the date the Supreme Judicial Court denied his final ALOFAR. Therefore, Petitioner argues, his June 15, 1999 petition was timely. The court agrees, Respondents' assertions to the contrary.

Respondents assert that Petitioner did not have a collateral state attack "pending" during the entire period between April 24, 1996 and July 27, 1998. In essence, Respondents contend that Petitioner's second motion for new trial ceased to be pending on November 14, 1996, when the trial court issued its denial; that a new collateral attack began on or about May 21, 1997, when Petitioner filed his motion for reconsideration; and that *this* latter collateral attack remained pending until July 27, 1998, when the Supreme Judicial Court rejected Petitioner's final ALOFAR. Thus, Respondents assert, as of July 27, 1998, Petitioner had already used up 187 days (November 14, 1996 through May 21, 1997) of his one-year "bank" and, therefore, had only 178 days (365 days minus 187 days), or until approximately mid-January, 1999, within which to bring a federal habeas petition. Because Petitioner did not file his petition until June 15, 1999, Respondents claim it must be dismissed as untimely.

Both Petitioner and Respondents cite *Gaskins v. Duval,* 183 F.3d 8 (1st Cir. 1999), in support of their respective positions. In *Gaskins,* the First Circuit held that a properly filed motion for a new trial suspended AEDPA's one-year clock from the time the motion was filed until the Supreme Judicial Court denied the petitioner's request for leave to appeal. *Id.,* 183 F.3d at 10. Although the court declined to blanketly rule "whether 'a properly filed application' for collateral review is 'pending' during the period that the state appeal petition is being *prepared,*" it excluded preparation time on the facts before it because, even counting those days, Gaskins' petition was timely. *Id.* at 10 n. 2 (emphasis in original).

In the past year, several courts of appeal have ruled, consistently, that a properly filed application for collateral review is indeed "pending" during the period that the state appeal petition is being prepared. *See, e.g., Nino v. Galaza,* 183 F.3d 1003, 1004 (9th Cir.1999); *Barnett v. Lemaster,* 167 F.3d 1321, 1323 (10th Cir.1999). *Accord Hudson v. Jones,* 35 F.Supp.2d 986, 988–89 (E.D.Mich.1999). *See also Healy v. DiPaolo,* 981 F.Supp. 705, 707 (D.Mass. 1997) (stating that petitioner "effectively tolled the one-year limitation period ... from running until such time as the state courts exhaust their review of his new claims"). The only contrary case cited in *Gaskins, Moseley v. French,* 961 F.Supp. 889 (M.D.N.C.1997), was recently abrogated by the Fourth Circuit. *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir.1999).

In line with these cases, this court believes that "under § 2244(d)(2), the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest state court ..., is tolled from the limitations period for federal habeas corpus petitioners who were already involved in state post conviction proceedings on April 24, 1996." *Taylor,* 186 F.3d at 561. As was stated in *Barnett,* "the term ['pending'] must be construed ... broadly to encompass all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies." *Id.* 167 F.3d at 1323. *See also Nino,* 183 F.3d at 1004 (9th Cir.1999) ("We conclude that ... the time must be tolled for the entire period in which a petitioner is appropriately pursuing and exhausting his state remedies.").

To sum up, on April 24, 1996, Petition's second motion for a new trial was pending in the state trial court. That motion continued to be pending until July 27, 1998, when the Supreme Judicial Court denied Petitioner's ALOFAR relating to that motion. Petitioner, therefore, had until approximately July 27, 1999, to bring a § 2254 petition. As a result, the court

believes that his petition, filed on June 15, 1999, was well within this extended period. The court thus recommends that, should it be necessary to address the issue, Respondents' statute of limitations argument be rejected.

### C.

 Finally, Respondents argue, again in the alternative, that one of Petitioner's claims—that the trial court's judge's failure *sua sponte* to hold a competency hearing violated his due process rights—was not properly "exhausted." Specifically, Respondents argue that Petitioner's final ALOFAR, as well as his final brief to the Appeals Court, was not cloaked in the language particular enough to raise the red flag of a potential federal constitutional violation. Because Respondents seem to concede that Petitioner's ineffective assistance of counsel claim has been adequately exhausted, the foundation of Respondent's argument is grounded in the well settled notion that a "mixed" petition, *i.e.,* one which contains both exhausted and unexhausted claims, must be dismissed in its entirety. *See Rose v. Lundy,* 455 U.S. 509, 510, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); 28 U.S.C. § 2254(b).

 In order to determine whether a federal claim has been adequately exhausted, a habeas court must assess whether the petitioner raised the issue with the state's highest court. *See generally O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). *See also United States ex rel. Kennedy v. Tyler,* 269 U.S. 13, 17, 46 S.Ct. 1, 70 L.Ed. 138 (1925); *Adelson v. DiPaola,* 131 F.3d 259 (1st Cir.1997); *Rivera v. Dipaolo,* 989 F.Supp. at 357 (citing *Vasquez v. Hillery,* 474 U.S. 254, 260, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)). Specifically, the habeas court must review the petitioner's final state application, as presented, and determine whether or not the challenged federal claim was contained within its "four corners." *See Adelson,* 131 F.3d at 263 n. 2. Stated another way, the habeas

court must decide whether the claim was presented to the state court "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." *Scarpa,* 38 F.3d at 1, 6 (1st Cir.1994) (citing *Nadworny v. Fair,* 872 F.2d 1093, 1101 (1st Cir. 1989)).

 A habeas petitioner may satisfy the exhaustion requirement by any of the following five methods: " '1) citing a specific provision of the Constitution; 2) presenting the substance of a constitutional claim in such a manner that it likely alerted the state court to the claim's federal nature; 3) reliance on federal constitutional precedents; ... 4) claiming a particular right guaranteed by the Constitution'[;] ... [or 5) ] ... assert[ing] ... a state law claim that is functionally identical to a federal claim." *Id.* (quoting *Gagne v. Fair,* 835 F.2d 6, 7 (1st Cir. 1987)). The burden rests with the petitioner to prove that the claimed ground for relief was sufficiently presented to the state court as to alert it to the existence of the federal claim. *Adelson,* 131 F.3d at 262.

Here, in the court's opinion, Petitioner has met his burden. In Petitioner's final ALOFAR, as well as in his final brief to the Appeals Court, Petitioner cited two federal cases in support of his claim with respect to a competency hearing. More importantly, Petitioner specifically argued in his papers that the trial court committed "federal constitutional error" and that he "was denied his rights ... under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution." (Resp'ts' Supplemental Answer (Docket No. 15), No. 14 at 12–14 and No. 17 at 9–10, 12.) While Petitioner may have done a better job of fleshing out his federal constitutional arguments, he clearly presented his claim to the state courts "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." As a result, the court does not ground its rec-

ommendation on Respondents' exhaustion argument.

### IV. CONCLUSION

Respondents' arguments to the contrary, the court believes that the instant petition for habeas corpus is both timely and properly exhausted. Nonetheless, for the reasons indicated above, the court finds that the petition should be barred by the "procedural default rule" and, therefore, recommends that Respondents' motion to dismiss be ALLOWED.[1]

---

1. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.